# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2122

ISAIAH HUMPHRIES,
*Appellant*

v.

THE PENNSYLVANIA STATE UNIVERSITY;
JAMES FRANKLIN; DAMION BARBER

_____

Appeal from U.S. District Court, M.D. Pa.
Judge Matthew W. Brann
No. 4:20-cv-00064

Before: MATEY, FREEMAN, and CHUNG, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a) on March 16, 2026
Decided:

_____

NONPRECEDENTIAL OPINION[*]

CHUNG, *Circuit Judge*.  Former Penn State football player Isaiah Humphries appeals from

the District Court's order dismissing with prejudice his Third Amended Complaint,

asserting multiple claims that he suffered abuse at the hands of his teammates, and that his

coaches and school failed to adequately respond to reports of that abuse.  For the reasons

set forth below, Humphries fails to plausibly allege any of his claims and we will affirm

the order of the District Court.

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

## I. BACKGROUND[1]

Humphries was recruited to join the Penn State football team as a freshman in the 2018-2019 school year. By December 2018, Humphries had transferred schools. In the interim, Humphries endured "a campaign to harass and haze" himself and other "selected members of the Penn State football team" at the hands of four of his teammates. A146 ℙ 143. The harassment involved threats to sexually assault Humphries, as well as instances of sexual brutality toward Humphries and other victims. This included perpetrators wrestling Humphries and other victims to the ground and placing or "smack[ing]" their genitalia on victims' faces, A149 ℙ 154, or placing their penises between victims' buttocks while naked in the locker-room shower. The harassment occurred, in unspecified form, two or three times a week in three locations: Penn State's Lasch Building, the Morgan Academic Center, and Beaver Hall dormitory.

Humphries is smaller than his abusers in weight and stature. He describes himself as compassionate and sensitive, refined, well-groomed, and not physically aggressive. Humphries is a musician, presents as affluent, does not use vulgarity, and does "not embrace the angry gangster or thug persona." A145 ℙ 138. Because of these attributes, Humphries alleges that he "was perceived by [his abusers] as weak and fail[ing] to live up to the expectations of stereotypical toughness and masculinity expected of a collegiate football player." A145-46 ℙ 139. Humphries asserts that he was targeted as a result.

---

[1] Because we write for the parties, we recite only the facts pertinent to our decision. The facts are drawn from Humphries's Third Amended Complaint and, at this stage, we accept them as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (in ruling on a motion to dismiss, "a court must accept as true all of the allegations contained in a complaint").

2

Humphries filed a ten-count complaint against Penn State, Coach Franklin, and one of his abusers, Damion Barber. Only the claims against Penn State and Coach Franklin ("Defendants") remain. The District Court granted Defendants' motion to dismiss all claims against them, and Humphries appeals.

## II. DISCUSSION[2]

A. Title IX Claim

Title IX provides, subject to exceptions not relevant here:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). Sexual harassment can amount to discrimination on the basis of sex under Title IX, see Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 283 (1998), and in certain circumstances, covered institutions may be liable for their actions (or inaction) in response to harassment committed by one student against another ("peer harassment"), Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 646-48 (1999). To establish liability under Title IX on account of peer harassment, Humphries must prove, among other things, that sexual harassment occurred. Hall v. Millersville Univ., 22 F.4th 397, 408 (3d Cir. 2022) (citing Davis, 526 U.S. at 645-50). The District Court found that

---

[2] The District Court exercised jurisdiction over Humphries's Title IX claim under 28 U.S.C. §§ 1331 and 1343(a) and supplemental jurisdiction over Humphries's state law claims under 28 U.S.C. § 1367(a). This Court has jurisdiction under 28 U.S.C. § 1291. Our review on appeal from an order granting a motion to dismiss is plenary. Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011). In assessing whether a complaint states a claim, we consider whether the "well-pleaded factual allegations … plausibly give rise to an entitlement to relief," Iqbal, 556 U.S. at 679.

3

Humphries did not plausibly allege the harassment he suffered was *on the basis of sex*. We agree.

Same-sex harassment may violate Title VII. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998). Humphries only asserts one of several theories that support same-sex harassment claims under Title VII (and by extension, Title IX): that his harassers "punish[ed]" him for "noncompliance with gender stereotypes." See Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 264 (3d Cir. 2001); see also Davis, 526 U.S. at 651 (looking to Title VII case law to ascertain whether "gender-oriented conduct" rises to the level of actionable harassment under Title IX); Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75 (1992).[3]

Humphries makes three key assertions in support of his gender-stereotyping theory of harassment. First, he asserts possession of certain characteristics, including that he is a musician, is articulate, does not use vulgarity, appears refined and well-groomed, presents as affluent, is compassionate and sensitive, is not physically aggressive, and does not embrace a "thug persona." A143-46 ¶¶ 117-39. Second, he claims that "[a]s a result of his characteristics, attributes, and demeanor[,] [he] was perceived by [his abusers] as weak and fail[ing] to live up to the expectations of stereotypical toughness and masculinity

---

[3] We have also said that for Title VII purposes, unwanted sexual touching is inherently gender-based harassment. See Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 214 (3d Cir. 2017) ("[W]hen a plaintiff alleges that she has been subjected to sexual touchings or comments ... she has established that the harassment occurred because of her sex." (quoting Lehmann v. Toys 'R' Us, Inc., A.2d 445, 454 (N.J. 1993))); Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist., 971 F.3d 416, 427 (3d Cir. 2020) (same). Humphries does not assert this theory, so we will not address it.

expected of a collegiate football player." A145-46 ¶ 139. And third, Humphries claims that he and other players were "targeted" because of their failure to live up to these same expectations. A147 ¶ 145. Humphries alleges no facts from which it can be deduced that his harassers viewed the specified characteristics as feminine and targeted him because he possessed such characteristics. Indeed, the Complaint alleges that other football players were subjected to the same treatment, though it does not allege that they shared the same traits and were targeted on that basis. See Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 90 (3d Cir. 2009). As the Third Amended Complaint does not plausibly allege that Humphries was harassed because his abusers perceived him as failing to conform to a masculine standard, we will affirm the dismissal for failure to state a claim under Title IX.

Humphries now offers two additional theories in support of his Title IX claim: a retaliation theory, and a theory of differential treatment by his coaches in *response* to his complaints of abuse. The differential treatment theory is absent from Humphries's Third Amended Complaint, and as such has been forfeited. United States v. Dowdell, 70 F.4th 134, 140 (3d Cir. 2023). The retaliation theory, arguably raised in the Third Amended Complaint was not sufficiently pleaded as no facts are alleged from which it can be reasonably inferred that the Defendants acted against him because they opposed his protected activity in reporting harassment. Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017) ("[T]o establish a *prima facie* retaliation case under Title IX, [Humphries] must prove [he] engaged in activity protected by Title IX, [he] suffered an adverse action, and there was a causal connection between the two.").

5

B. Negligence Claims

Humphries also pursues several theories of negligence against Defendants. For the reasons that follow, none is plausibly alleged in the Third Amended Complaint.

1. Negligence per se

To prove a claim for negligence, a plaintiff generally must establish four elements: duty, breach, causation, and damages. See Grove v. Port Auth. of Allegheny Cnty., 218 A.3d 877, 889 (Pa. 2019). A plaintiff may establish the first two elements on a theory of negligence per se by proving that "an applicable statute exists and that the defendant violated that statute." Id. (quoting Sodders v. Fry, 32 A.3d 882, 887 (Pa. Commw. Ct. 2011)). Humphries claims negligence per se by Penn State, based on an alleged violation of the Timothy Piazza Antihazing Law, 18 Pa. Cons. Stat. §§ 2801-11 (effective November 19, 2018) ("Timothy Piazza Law"), and its predecessor statute, the Antihazing Law, 24 Pa. Stat. §§ 5351-54 (repealed).[4] Both laws include, as part of their definition of a hazing offense, that the offense is committed "for the purpose" of initiating, admitting or affiliating a student into an organization, or for the purpose of continuing membership or status in an organization. 18 Pa. Cons. Stat. § 2802; 24 Pa. Stat. § 5352 (repealed). Humphries does not allege facts from which it can be reasonably inferred that the abuse he suffered had the purpose of his initiation or continued membership on the team. Thus, Humphries does not

---

[4] The period of Humphries's abuse encompasses the effective periods of both statutes.

plausibly allege negligence per se by a violation of either hazing law.[5]

2. Common Law Negligence

Humphries's common law negligence claims against both Coach Franklin and Penn State also fail. In Pennsylvania, it is "well-settled" law that there is no duty to control the conduct of a third party to protect another from harm. Maas v. UPMC Presbyterian Shadyside, 234 A.3d 427, 440 (Pa. 2020). Humphries argues that four exceptions to this rule apply here. We disagree.

First, Humphries argues that Defendants owed him a duty under Restatement (Second) of Torts § 323 (1965), based on Defendants' provision of coaching and academic services. Under Section 323, the "Good Samaritan" provision, a defendant who undertakes services "necessary for the protection of [another's] person or things" may be liable for the failure to perform those services with reasonable care. Restatement (Second) of Torts § 323 (1965); Feleccia v. Lackawanna Coll., 215 A.3d 3, 14 (Pa. 2019) (noting prior adoption of Section 323 as an "accurate statement of Pennsylvania law"). However, the services undertaken in this case—coaching and academic services—were not "necessary for the protection of" Humphries, such that they would create a duty under Section 323.

Second, Humphries argues that there was a duty based on a "special relationship" between Penn State and himself as a student athlete, pursuant to Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1367-69 (3d Cir. 1993). Under Pennsylvania law, "there is no duty

---

[5] Moreover, the Antihazing Law, unlike its successor, did not impose institutional liability for hazing offenses. Compare 24 Pa. Stat. § 5354 (repealed), with 18 Pa. Cons. Stat. § 2805.

to control the conduct of a third party to protect another from harm," unless the defendant "stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives to the intended victim a right to protection." Emerich v. Phila. Ctr. for Hum. Dev., Inc., 720 A.2d 1032, 1036 (Pa. 1998). The Kleinknecht Court determined that a student-athlete's participation in the school-sanctioned athletic activity for which he had been recruited created a special relationship between the student-athlete and the college. Kleinknecht, 989 F.2d at 1367. The college therefore owed the student-athlete a narrow duty to be reasonably prepared for medical emergencies that may foreseeably arise during his participation in the sport for which he was recruited. Id. at 1371.

Even assuming a special relationship was created between Humphries and Defendants, most of the contexts in which Humphries suffered abuse, a dormitory and an academic building, were not related to his athletic participation. Applying a duty in those locations would convert the narrow duty in Kleinknecht to a general duty owed by colleges to their student athletes, a duty that the Pennsylvania Supreme Court has rejected. Alumni Ass'n v. Sullivan, 572 A.2d 1209, 1213 (Pa. 1990).

Humphries does allege conduct took place in the locker room, a football-specific context. But Humphries fails to argue that his teammates' conduct was a foreseeable risk of holding football practice and providing locker facilities, thus providing no support to extend the narrow duty applied to the facts in Kleinknecht. See City of Philadelphia v.

8

Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").[6]

Third, Humphries argues that Defendants also had a special relationship with him based on "affirmative acts," including statements made by Coach Franklin assuring parents that he would look after their players. However, the authority he cites, Feleccia v. Lackawanna College, 215 A.3d 3 (Pa. 2019), does not address whether broad promises like those made by the coaches here create a special relationship. Rather, the Court in Feleccia concluded that, under the Good Samaritan principle discussed above, the defendant's specific representations and acts demonstrated that the defendant undertook services for the protection of the plaintiff and that this undertaking created a duty to provide those services. Feleccia, 215 A.3d at 14-16 (defendant's conduct, holding out two employees as certified athletic trainers and obtaining students' consent to be treated by them, created duty to provide certified athletic trainers at practice). Here, the promises are vague and fail to demonstrate any specific undertaking by Defendants for the protection of Humphries.

Finally, Humphries claims that Defendants owed him a duty based on premises liability and his status as a business visitor. As to Coach Franklin, Humphries's premises liability theory fails because he is not alleged to be a possessor of land. See Paliometros v. Loyola, 932 A.2d 128, 133 (Pa. Super. Ct. 2007). Humphries does allege that Penn State is the

---

[6]   Because the narrow duty in Kleinknecht is inapplicable and we decline to extend it, we need not consider at this time a question discussed by the District Court: whether the duty established in Kleinknecht withstands the Pennsylvania Supreme Court's subsequent decision in Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000) (announcing factors to consider before recognizing legal duty).

possessor of the Lasch Building. However, Humphries failed to argue before the District Court that he was a business invitee, see Paliometros, 932 A.2d at 133 (citing Restatement (Second) of Torts, § 314A(3)), and therefore has forfeited this argument.[7]

\* \* \* \* \*

Despite alleging grievous misconduct by his teammates, Humphries has not plausibly alleged a cognizable claim for relief under Title IX or in tort. Therefore, we will affirm the order of the District Court dismissing his Third Amended Complaint with prejudice.

---

[7] Humphries also challenges the dismissal of his claim for negligent infliction of emotional distress against Defendants. This claim cannot survive absent a plausible negligence claim. Jordan v. Pa. State Univ., 276 A.3d 751, 774 (Pa. Super. Ct. 2022). Because each of Humphries's negligence claims fails, this claim fails as well.